56 CCPA

**FERRO CORPORATION, Appellant,**

v.

**QUAKER CHEMICAL CORPORATION, Appellee.**

*Patent Appeal No. 8023.*

United States Court of Customs and Patent Appeals.

Dec. 19, 1968.

**620**

Milton L. Simmons, Cleveland, Ohio, for appellant.

Joseph Rossman, Philadelphia, Pa., for appellee.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND, and BALDWIN, Judges.

ALMOND, Judge.

Ferro Corporation appeals from the decision of the Trademark Trial and Appeal Board, 150 USPQ 685, dismissing its opposition to the application [1] of the Quaker Chemical Corporation to register "FERROCOTE" for rust preventative of oil, grease, varnish-like, and waxy character, applied as films on metals, asserting use since January 1936.

Appellant (opposer) is the registrant of the mark "FERRO" for glazed and enameled frit and clay; [2] for inorganic cobalt compounds, plastic stabilizers, and fungicides; [3] for fertilizer material comprising friable glass-like substances in finely divided form containing essential plant foods; [4] for organic and inorganic colorants and pigments for use in ceramics, plastics, organic paints and finishes, vitreous enamels, inks, glazes and building materials, screening oils, pastes, wetting compounds, and color concentrates suspended in plastic resin vehicles; [5] and for glass fibers in bulk and variously assembled for use in fabricating molded and other products wherein such fibers are incorporated; [6] of "FERROLITE COMPOUND" in association with a design for cleaning compounds for general use, particularly adapted for all railroad maintenance cleaning; [7] and of "FERRO PICKLE PILLS" for chemicals for chemical quantitative analysis of acids, alkalies, and elements in solutions in pickling baths. [8]

The board considered the evidence of two of appellant's witnesses, each of whom was employed by a large producer of household appliances and each of whom held a responsible position and was familiar with the process of enameling and with opposer's enamel frit. Each of these witnesses was asked a similar qutestion, to wit, "could you state, * *, what your initial impression would be as to the probable supplier of a proprietary product you happened to see in your finishing department which was characterized by the mark "FERROCOTE" ? Each of the witnesses indicated that he would assume that it would be a product of Ferro Corporation. The board, however, pointed out that appellee's goods would not ordinarily be

1. Serial No. 198,493, filed July 24, 1964.
2. Reg. No. 545,912, issued July 31, 1951.
3. Reg. No. 549,848, issued Oct. 23, 1951.
4. Reg. No. 628,518, issued June 12, 1956.
5. Reg. No. 684,616, issued Sept. 8, 1959.
6. Reg. No. 758,244, issued Oct. 15, 1963.
7. Reg. No. 319,895, issued Dec. 11, 1934.
8. Reg. No. 614,665, issued Oct. 25, 1955.

found in the particular industrial environment in which the witnesses practiced, namely, an enamel finishing department and discounted their testimony, stating:

> * * * We do not find the testimony of these witnesses as to likelihood of confusion persuasive.

The board then discussed the probability that the term "ferro" would be more likely to lead a prospective purchaser to associate the term with iron rather to a connection with the Ferro Corporation, stating:

> The term "ferro" constitutes a combining form indicating iron. See: Webster's Third New International Dictionary. Said term, as indicated by the record has been adopted many times as part of trademarks and trade names. As stated by the court in Ferro Corporation v. Ronco Laboratories, Inc., 356 F.2d 122, 53 CCPA 913 (1966). "It is not believed that appellant [opposer here] is, by virtue of prior registrations, entitled to the sole possession of the term 'ferro'". Considering the well known meaning of "ferro" we believe that any prospective purchaser of a rust preventative will comprehend the connotation of "FERROCOTE" and relate the initial part of said mark to iron rather than assume a connection with opposer. * * *

Finally, the board concluded:

> * * * We conclude that applicant's mark does not so resemble opposer's mark "FERRO" as to be likely when applied to applicant's goods to cause confusion or mistake or deception.

In commencing our review of this appeal, we are struck by the resemblance of this situation to that presented before this court in Ferro Corporation v. Ronco Laboratories, Inc., 356 F.2d 122, 53 CCPA 913 (1966). In that proceeding *the same opposer, Ferro Corporation,* relying on the *same trademark registrations* as are presently relied upon, sought to oppose registration of the mark "FERROGARD" for rust preventative oils,

conceded by appellant in this appeal to be *the same product.* This court affirmed the decision of the Trademark Trial and Appeal Board dismissing the opposition, stating:

> Considering the many dissimilarities between appellant's marks and the mark sought to be registered, we agree with appellee's argument and the board's holding. It is not believed that appellant is, by virtue of prior registrations, entitled to the sole possession of the term "ferro."

In assessing the persuasive weight to be given to the *Ronco* case, we take note of certain factual distinctions in that case. Most obvious of these distinctions is, of course, the difference between the marks FERROCOTE involved in the present appeal and FERROGARD involved in *Ronco.* In *Ronco* the mark "FERROGARD" sought to be registered included a design. As a result, there was a greater visual distinction between the marks in *Ronco* than in the present situation in which the mark "FERROCOTE" is not accompanied by a design. Appellant, however, has attached no legal significance to this distinction and neither do we in the particular situation before us.

Instead appellant seeks to distinguish the *Ronco* situation from that before us, by a different reasoning. Appellant quotes the following portion from the decision of the *board* reproduced in our *Ronco* opinion:

> "Opposer's products, while specifically different from an oil to prevent rust and corrosion, nevertheless are compounds which are used in the treatment of metals or metal products or as a protective coating therefor. The products of both parties are sold to the same industrial users, and insofar as the record discloses, they may, at times, be distributed through the same trade channels. Under the circumstances, the respective products are considered to be so related that a likelihood of confusion could occur were they to be marketed under the same or confusingly similar marks.

Appellant then argues that as he has taken more extensive testimony (than was produced in *Ronco*) to show that the products of the parties could originate from a single source, a different result should be reached. As we understand the board in *Ronco,* they were saying that (1) the products may be from the same source hence (2) *if* the marks are confusingly similar, *then* (3) there may be a likelihood of confusion by purchasers that the goods originate from a common source. Appellant has incorrectly blurred the steps of reasoning thus set forth and appears to pass in one swift non sequitur from a position that as he. has provided additional testimony, which *arguendo* shows the goods could have a common source, then it follows there is a likelihood of confusion.

■ While on the subject of the additional testimony provided by appellant, we decide that the board was correct in finding the testimony of the witnesses Pfeiffer and Fighter not to be persuasive on the issue of likelihood of confusion. Each of these witnesses had been a customer of appellant for enameling materials for many years and used appellant's products extensively for enameling. Each of these witnesses on being asked what his initial impression would be on seeing a drum marked FERROCOTE in his department, indicated that he would assume it was a product of Ferro Corporation.

It seems to us open to considerable doubt, however, whether this reaction would be typical of prospective purchasers for rust preventing oils, a material not commonly found in an enameling department. Furthermore, some purchasers are unaware of the existence of Ferro Corporation (which appellee remarks in his brief is one of at least nine corporations having the syllable "ferro" in their name) or its products and would therefore be as unlikely to associate FERROCOTE with Ferro Corporation as the witnesses Pfeiffer and Fighter would be to do to the contrary.

■ We are thus led back to consideration of the significance of the syllable "ferro," and we agree with the board that to the average purchaser the term is more likely to have an association with iron than with appellant. As the mark FERROCOTE does not otherwise so resemble appellant's mark FERRO as to cause likelihood of confusion, we therefore affirm the decision of the board.

Affirmed.

SMITH, J., participated in the hearing of this case but died before a decision was reached.